## Stark *v.* Gamble.

Where a guardian settled his accounts with his wards soon after they became of age, without any examination of items, or the aid of friends on their part, and on delivering to each his share as computed by the guardian, they gave him discharges in full, such accounts may be re-opened in the probate court for the correction of mistakes or errors, such as the omission to charge the guardian with interest where it ought to have been charged.

Where a guardian received about $900 for the sale of a farm belonging to his four wards, his nephews and nieces, which was gradually diminished in the course of ten years to $500, by payments for taxes, and small sums to their mother toward their support, and the money was mingled with that of the guardian, who was accustomed to loan money upon mortgage, it was held that the guardian ought to be charged with interest at five per cent, although it appeared that he was accustomed to keep on hand a sum larger than the balance of this fund.

This is an appeal from a decree of the probate court of the county of Hillsborough, made November 22, 1859, by which the guardian accounts of the appellant with his wards Eleanor Gamble, Susan S. Abbott, John Gamble, and Archibald Gamble, were ordered and decreed to be opened for settlement, and that the appellant should make and present separate and distinct accounts with each of said wards, and therein charge himself with annual interest at five per cent on all the money of the several wards, and allowing the same interest on his expenditures.

The reasons for the appeal are, that the accounts with each of the wards, except Archibald Gamble, were settled with the guardian after they severally became of age, and that Eleanor and Susan received the amount found due them, and gave written discharges therefor; and that John Gamble gave his note for a balance which was found to be due the guardian; and the guardian also claims that owing to the great lapse of time since such settlements, the accounts ought not to be re-opened. And as to the accounts with Archibald Gamble, the appellant says he has always been willing to render and settle the account, but claims that he is not liable for interest upon the moneys received by him, for the reason that the amount was so small, never exceeding $225, that it could not be safely invested and leave the necessary surplus for contingent expenses, and that he never did invest any of it, or receive any interest upon it; but that a larger sum was always lying idle in his hands.

From the report of the commissioner, C. W. Stanley, made December term, 1860, it appears that the appellant was appointed guardian of these wards, August 4, 1840, and immediately entered upon its duties; that between that time and March 31, 1852, he received, as such guardian, $1,693.54, of which $985 was received November 11, 1843, for the price of a farm sold by him; that the eldest, Eleanor Gamble, became of age October 21, 1851, and that he settled with her May 30, 1854, about two years and seven months after, and paid her $196,05, and took her receipt in full for her share; and the auditor finds that she, at that time, came to his house at his request, for that purpose; that he showed her no vouchers, nor did she ask him for them; that his account was in a large book, kept in ledger form, and open on the table before him; but she did not ask him to explain it to her, nor did he offer any explanation; that

he wrote a receipt for the $196.05 in full, told her it was her share, and requested her to sign the receipt, which she did. He told her that he should not pay her any interest, nor did she ask for any; and he made no charge for commissions.

It appeared, also, from the report, that Susan became of age December, 1855, and on the 12th of that month, she went to the guardian's house for her money, and he paid $176.25, and took from her a discharge in full for all moneys in his hands as her guardian; that no account or vouchers were shown or asked for, but he informed her that that was her share. On her asking for interest, he told her he was not bound to pay it, and he should not, and did not pay it, and she then signed the discharge without being informed by him of the amount received or paid. John became of age in August, 1853, and after it the guardian settled with him in the same manner as with Susan, except that he told him he had overpaid him; and he took John's note for the balance, without allowing any interest, although John claimed it. The time of this settlement is not stated, but it appears from the accounts rendered that the note was given September 14, 1853, the month following John's majority.

It appeared further that the guardian was the maternal uncle of his wards; that no account was settled with Archibald, who became of age in the spring of 1859, and that nothing further was done to settle the guardianship accounts, until June, 1859, when a petition was filed by the wards to compel him to settle in the probate court, and since the filing thereof the said Archibald has died, and the petition is prosecuted by Yeaton, his administrator.

*Stark*, for the appellant, to the point that the accounts should not be re-opened, cited *Kittredge* v. *Betton*, 14 N. H. 410; *Boynton* v. *Dyer*, 18 Pick. 5; and to the point that the guardian ought not to be charged with interest, he cited *DePeyster* v. *Clarkson*, 2 Wend. 88; Hill on Trustees 374, n.; *Kerr* v. *Snead*, 11 Law Rep. 217; 1 Sandf. Ch. 399; *Moyle* v. *Moyle*, 2 R. & M. 715; *Bone* v. *Cook*, 13 Price 343; *Say* v. *Barnes*, 2 S. & R. 112; *Brown* v. *Pemberton*, 12 Ves. 386, 4 Madd. 419; also, *Parrott* v. *Treby*, Prec. Ch. 254; *Boddam* v. *Riley*, 4 Bro. P. C. 561; *Hooker* v. *Goodwin*, 1 Swanst. 485; Wilkes' Charity *in re*, 20 L. J. Chan. 588; *Wyatt* v. *Wallis*, 8 Lond. Jur. 117; and to the point that the wards have slept too long upon their rights, he cited *Merry* v. *Rivers*, 1 Edw. Ch. 1; *Barrington* v. *O'Brien*, 1 Ball & Beatty 173.

*Topliff*, for the appellees, to the point that the accounts ought to be re-opened, cited 21 N. H. 9; 14 N. H. 401; Hill on Trustees 232; 1 Story, Eq. Jur. 506; and to the point that interest ought to be charged, he cited 1 N. H. 179; 2 N. H. 219; 8 N. H. 444; 11 Mass. 504; 13 Mass. 232; 1 Pick. 527; 18 Pick. 1; 2 Wend. 77; 2 Kent's Com. 231.

BELLOWS, J.    The first question that arises is as to the effect of the settlement with the three wards.    On this point it is quite clear

that such a settlement is not a compliance with the condition of the bond; which requires the guardian to render an account when called upon in the probate court. *Kittredge* v. *Betton*, 14 N. H. 401; *Clark* v. *Clay*, 31 N. H. 393. So if there has been a manifest mistake in an account settled in the probate court, it is competent for the judge, at any time before a final settlement of the estate, to correct it in a subsequent account, provided there does not appear by the record to have been a particular adjudication upon the subject; as mistakes will unavoidably occur, and it is just and reasonable that they should be thus corrected. *Allen* v. *Hubbard*, 8 N. H. 487, and cases cited. In *Kittredge* v. *Betton*, before cited, which was also an appeal from the decree of a judge of probate, a settlement had been made by the guardian with the ward, more than three years after he became of age, but it appearing that there were some errors in it, although its fairness was not impeached, the court held (*Parker*, C. J.) that the settlement ought not to protect the guardian in charging what was not due, or more than was due, and that all claims arising from errors, mistakes, omissions and even overcharges should be accounted for, and that the account might be considered as in the probate court, and the appellant might object to it as on leave to surcharge and falsify. In *Clark* v. *Clay*, 31 N. H. 393, the only heir to an estate had certified to the correctness of the administration account; but the court held that a settlement with an administrator or guardian is not conclusive, but will be evidence for the consideration of the court in deciding whether a further settlement shall be ordered; and in this case the accounts were still reëxamined and corrected. A similar doctrine is recognized in *Bond* v. *Ward*, 3 Met. 74, where there was a receipt in full from all the heirs; and it was held to be no bar to an application for a settlement in the probate court, the receipt being nothing more than *primâ facie* evidence of payment, which might be controlled.

In the case before us, the settlements and receipts were had immediately upon the coming of age of Susan and John, and two years and seven months after the majority of Eleanor, and at the time the shares of Eleanor and Susan were delivered over to them. It appears that no accounts were rendered, or explanations given, nor were any advisers on the part of the wards present; but they were told by the guardian that the balances stated were correct; and upon the subject of interest being named, he declined to allow interest; and to two of the wards said he was not bound to pay it. The wards thereupon closed the settlements in the manner stated.

As a general proposition, courts of equity are extremely watchful to prevent a guardian taking an advantage of his ward by a settlement immediately on his coming of age, and although there may be no other evidence of undue influence, or unfairness, yet upon grounds of public utility the courts will take care that the ward does not suffer by such settlement; and especially is it the case, where the settlement is made at the time the estate is delivered over to the ward. 1 Story's Eq., secs. 317, 320, and cases cited.

*Hylton* v. *Hylton,* 2 Ves. 547 ; *Wood* v. *Downes,* 18 Ves. 119. Where a guardian, within a month after the ward became of age, settled an account with him when the ward had no friend or adviser on his part, the account was ordered to be opened. *Revett* v. *Harvey,* 1 Sim. & St. 502, cited in 2 Kent's Com. 253, and a similar doctrine is announced in *Kittredge* v. *Betton,* before cited.

Upon the authority of these cases, we think it quite clear that any errors or omissions that are shown to exist in the former settlement, should now be corrected ; and the omission of the guardian to charge himself with interest, when he should have done it, stands, for aught we can see, upon the same ground as the omission to charge himself with the principal of moneys received ; and so it is decided in *Boynton* v. *Dyer,* 18 Pick. 1.

The question then is, whether, under the circumstances of this case, the guardian should have charged himself with any interest on moneys in his hands, and if so, what interest. Until November 11, 1843, the amount of money received by the guardian was very small, and but a trifle more than his expenditures ; but at that time he received from the sale of a farm of his wards $985, and at the close of that year, on the first day of January, 1844, there was in his hands $895.03, after deducting the expenditures of the year 1843. This sum was mingled with his own funds, which he was accustomed to loan upon bond and mortgage, having, as the auditor finds, invested in that way in his own name, more than $25,000, during his said guardianship ; and although the creditor also finds that he always had on hand money sufficient to meet any demand that might be made on him on account of his wards, we think he should be charged with interest from the first day of January, 1844. For five years the balance in his hands remained nearly stationary, being gradually diminished to $828.04 in 1849, and it was not until 1854 that it fell below $500.

Nor do we think there was occasion to retain so large a sum unemployed to meet contingencies, inasmuch as the wards appear to have lived at home with their mother, and for many years the payments by the guardian for their support were mainly to her, and quite small ; in some years in fact nothing. The other expenditures were mainly for taxes on lands of the wards, which were tolerably uniform.

Our conclusion, therefore, is, that separate guardian accounts be rendered with each of said wards, or their representatives, and that interest be credited to them from January 1, 1844, upon the moneys received by the guardian, at the rate of five per cent per annum, with annual rests, deducting the interest on the expenditures made by him, reversing so much of the decree as directs interest to be credited prior to January 1, 1844. This will be equivalent to charging the guardian with six per cent interest and allowing him a commission upon it of one per cent, as seems to be the ordinary rule in this State. *Gordon* v. *West,* 8 N. H. 455 ; *Wendell* v. *French,* 19 N. H. 211.

Let a decree be entered according to these views, and the matter remitted to the probate court for further proceedings.